UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

CONRAD P. SEGHERS, individually and on behalf of
INTEGRAL HEDGING OFFSHORE, LTD.,
as its founder, sole officer and director; and
KOMODO HOLDINGS, LTD., derivatively
as a shareholder on behalf of
INTEGRAL HEDGING OFFSHORE, LTD.,

Judge Berman

Plaintiffs,

06 CV 0308<br>06 CV  (  )  ECF CASE

v.

DAVID THOMPSON,
WAEL CHEHAB,
JAMES ALBAN-DAVIES,
and, as nominal derivative action defendant,
INTEGRAL HEDGING OFFSHORE, LTD.,

<strong>COMPLAINT</strong>

<strong>Jury Trial Demanded</strong>

Defendants.

-------------------------------------------------------------x



RECEIVED
JAN 1 3 2006
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiffs Conrad P. Seghers, Komodo Holdings, Ltd., and Integral Hedging Offshore,

Ltd., by their attorneys Manuel & Jones, P.C., for their complaint against defendants David

Thompson, Wael Chehab and James Alban-Davies, and nominal derivative action defendant

Integral Hedging Offshore, Ltd., allege:

<strong><u>INTRODUCTION</u></strong>

1.       This is an action by (i) Conrad P. Seghers, founder, sole officer and sole director

of Integral Hedging Offshore, Ltd. ("IHO"), for himself and on behalf of IHO, and (ii) Komodo

Holdings, Ltd., derivatively as a shareholder on behalf of IHO, against defendants David

Thompson, Wael Chehab and James Alban-Davies (sometimes referred to herein as the

"Insurgent Directors") for staging an illicit purported takeover of IHO in New York, in violation

of the IHO Memorandum and Articles of Association ("Articles of Association") and

Information Memorandum, the laws of New York and  the laws of the British Virgin Islands.

1

2.      Following the illegal purported takeover, the Insurgent Directors then purportedly but illegally surrendered de facto control of IHO to the attorneys for a Texas receiver.  Although IHO was never placed in receivership, the Insurgent Directors have agreed that nearly all its assets will be distributed by the Texas receiver to investors in separate, domestic hedge funds that were placed in the receivership.

3.      The Insurgent Directors' illegal takeover and their subsequent illegal actions have led to the impending destruction of IHO and the forfeiture of IHO's assets, causing losses to the IHO investors in excess of $4,000,000.  Plaintiffs seek the following relief: (i) a declaratory judgment that, among other things, the purported takeover of IHO by the Insurgent Directors and the purported turnover of de facto control of IHO to the Texas receiver and his attorneys are a nullity, (ii) a preliminary and permanent injunction against the Insurgent Directors' dissipation of IHO's assets and the distribution of those assets to persons other than IHO shareholders, (iii) damages in excess of $4,000,000 against the Insurgent Directors, and (iv) a declaratory judgment that the Insurgent Directors and any persons for whom they have acted or who have acted for them, by reason of their illegal actions, (a) not partake in the damages recovered, and (b) reimburse IHO for all money taken or received by them from IHO.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between plaintiffs and defendants, and the amount in question, exclusive of interest and costs, exceeds $75,000.

5.      This Court has jurisdiction over this actual controversy within its jurisdiction and may declare the rights and other legal relations of the parties pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2002.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because it is the judicial district where two defendants reside, where IHO conducted most of its business and held shareholder meetings; where its administrator, brokerage firm and legal counsel were located, and where the principal illegal acts complained of took place.

## PARTIES

7.     Plaintiff Conrad P. Seghers ("Seghers") is, and was at all times mentioned, domiciled in and a resident of the State of Texas.  He is the founder and the sole officer and director of IHO and the managing partner of the investment advisor of IHO, and in those capacities he brings this action individually and on behalf of IHO.

8.     Plaintiff Komodo Holdings, Ltd. ("Komodo") is a British Virgin Islands international business corporation.  Komodo is a shareholder of IHO, holding both class A070 and class A0701 shares from at least four separate investments it made in IHO.  Jan Vandevenne, the sole director of Komodo, has authorized this derivative, declaratory judgment and damages action on behalf of Komodo.

9.     Plaintiff and nominal derivative defendant Integral Hedging Offshore, Ltd. is, and was at all times mentioned, an international business company duly organized and existing under the laws of the British Virgin Islands, with its registration address: Integral Hedging Offshore, Ltd., c/o O'Neal Webster O'Neal Myers Fletcher and Gordon, 30 Decastro Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  At all times relevant hereto, IHO's business operations were conducted principally in New York, New York.  The Fund Administrator was Olympia Capital International, Inc., 1211 Avenue of the Americas, 29th Floor, New York, New York 10036, attention: Larry Platoni, where most of IHO's activities, including marketing, documentation, valuations, shareholder letters, notifications and statements were created and

3

distributed. The Fund Broker was Spear, Leeds, & Kellogg, LP, a Goldman Sachs Company, 120 Broadway, 6th Floor, New York, New York 10271, attention: Greg Lindstrom. The Fund Legal Advisor of IHO as to United States law was Tannenbaum Helpern Syracuse & Hirschtritt LLP, 900 Third Avenue, New York, New York 10022, attention: Michael G. Tannenbaum, Esq.

10.     Defendant David Thompson ("Thompson") is an administrator of hedge funds and a Managing Director of AMS Limited, Continental Building, 25 Church Street, P.O. Box HM 265, Hamilton HM 12, Bermuda. Upon information and belief, Thompson had no affiliation with IHO until he was contacted by defendant Wael Chehab and defendant James Alban-Davies to replace the administrator of IHO and become the new IHO administrator, without the legal justification to perform this action.

11.     Defendant Wael Chehab ("Chehab") upon information and belief is, and was at all times mentioned, president and a shareholder of Cedar Capital Management ("Cedar Capital"), 767 Third Avenue, 28th Floor, New York, New York 10017. Upon information and belief, Chehab and Cedar Capital were never shareholders of IHO.

12.     Defendant James Alban-Davies ("Alban-Davies") upon information and belief is, and was at all times mentioned, a principal in Petercam Capital (Americas) Inc., 660 Madison Avenue, 21st Floor, New York, New York 10021. Upon information and belief, at all times mentioned Alban-Davies was a director of Concerto Capital, an investor in IHO that held less than two percent of the outstanding shares of IHO.

## BACKGROUND

### I. Background of IHO

13.    Plaintiff Conrad P. Seghers founded IHO as an offshore hedge fund and incorporated it on May 19, 2000.  IHO was organized under the laws of the British Virgin Islands.  IHO was formed to make investments on behalf of investors outside the United States. As described in the Information Memorandum:

> Integral Hedging Offshore, Ltd. (the "Fund") is an open-end investment company incorporated in the British Virgin Islands (the "BVI") on May 19, 2000.  The Fund is a "Professional Fund" as that term is defined in the British Virgin Islands' Mutual Funds Act (1996), as amended by the Mutual Funds Amendment Act (1997).  The Fund is offering Class A Common Shares and Class B Common Shares (the "Class A Shares" and "Class B Shares," respectively, and each a "Class" and collectively . . . the "Shares") denominated in U.S. Dollars.  The Shares of each Class are further issued in series, with a new series being issued on each date that the Fund permits subscriptions for Shares (each, a "Series") as further discussed herein.  The purchase price per Share for each Series is U.S. $100. Upon acquiring Shares, investors become shareholders in the Fund (each, a "Shareholder," and together, the "Shareholders"). . . .
>
> **Investment Strategy.**  The Investment Advisor (as defined herein) will generally invest the assets of the Fund in bonds, equities, equity options, put and call options, forwards and swap contracts, index and index options, and various equity, bond and currency arbitrage transactions, and other publicly and over-the-counter traded instruments.  Using these securities, the Fund will construct a diversified portfolio of arbitrage transactions, interest generating hedged transactions and hedged directional transactions, using forward contracts, swaps and publicly traded instruments such as equities and equity options and index options.

14.    Between June 2000 and September 2001, IHO raised a total of approximately $17 million in investments from at least 11 investors and at least 25 separate investments.  As of July 1, 2001, the shareholders and their respective investments were:

5

| Fee Period | Shareholder | Beginning Assets |
|---|---|---|
| July, 2001 | ZCM Asset Holdings Co. | $6,811,770.43 |
| | Marcuard Cook & Cie | 605,917.20 |
| | Marcuard Cook & Cie | 503,941.50 |
| | Swisstor | 0.00 |
| | ZCM Asset Holdings Co (Umbach) | 1,043,567.00 |
| | ZCM Asset Holdings Co (Stillwater) | 1,168,069.76 |
| | ZCM Asset Holding Co (Van Ossterbosch) | 300,752.70 |
| | ZCM Asset Holding Co CLA 0201 | 1,001,633.00 |
| | ZCM Asset Holding Co CLA 0301 | 100,529.40 |
| | ZCM Asset Holding Co CLA 0401 | 1,363,313.70 |
| | Komodo Trading Co | 63,518.68 |
| | Komodo Trading Co | 34,789.16 |
| | Komodo Trading Co | 19,347.26 |
| | Komodo Trading Co CL A 0701 | 27,056.29 |
| | Petra | 34,789.16 |
| | Petra | 19,371.37 |
| | Petra CL A 0701 | 27,056.29 |
| | Tact CL A Series 0201 | 1,001,633.00 |
| | Concerto CL A Series 0201 | 200,326.60 |
| | Concerto CL A Series 0401 | 97,956.61 |
| | Aquae Sous Investment Fund | 504,931.00 |
| | Multi Advisor Arbitrage Inv Ltd | 1,514,793.00 |
| | 3R Ltd 3R Strategic | 504,931.00 |
| | 3R Ltd 3R Strategic | 500,000.00 |
| | ABN | 317,483.15 |
| | Total July | $17,767,477.26 |

15.     As of September 1, 2001, the value of the assets in IHO was approximately

$17,259,000.  As of December 31, 2001, the value of the assets in IHO was approximately

$4,169,000, consisting of the following assets:

| | |
|---|---|
| $425,823.05 | Integral Hedging Offshore, Ltd. assets at Spear Leeds Kellogg |
| $60,353.13 | IHO assets at other brokerage firms |
| $940,255.10 | IHO assets at Comerica Bank |
| $1,742,976.88 | Olympia IH Offshore Account |
| $1,000,000.00 | IHO assets with Thornton Capital Advisors, Inc. |
| **$4,169,408.16** | **Total Integral Hedging Offshore, Ltd. Assets 12/31/01** |

16.     As of the date of this action, the value of the assets in IHO is approximately $50,000 because of the actions of the Insurgent Directors.

17.     Seghers was the founder and at all times the sole officer and director of IHO and the managing partner of the Investment Advisor of IHO.  From June 1, 2000 through the fourth quarter of 2001, IHO had three directors: Seghers, Oskar P. Lewnowski and William F. Maycock.  Oskar P. Lewnowski and William F. Maycock were both principals of the administrator of IHO, Olympia Capital International, Ltd., and/or its associated company Winchester Global Trust Co., Ltd.  In the first quarter of 2002, Hedge Funds Services, Ltd. became the administrator of IHO, and Oskar P. Lewnowski and William F. Maycock were replaced as directors with two principals of Hedge Funds Services, Ltd.  Since at least the second quarter of 2002 Seghers has been the sole officer and sole director of IHO.

## II.  <u>Receivership of the Domestic Hedge Funds, But Not IHO</u>

18.     In early 2002, several domestic hedge funds founded by Seghers, named Integral Hedging, LP, Integral Arbitrage, LP and Integral Equity, LP, following declines in asset values that had been incurred by certain of those domestic funds, were placed under a Dallas, Texas, court-appointed administrator, Daniel Jackson, in an action entitled *The Art Institute of Chicago v. Integral Hedging, L.P.*, et al., No. 01-10623 (Tex. Dist. Ct., Dallas).

19.     On August 19, 2002, Jackson was appointed receiver of the domestic hedge funds by the court in Dallas.  Jackson was never appointed receiver of the offshore fund, IHO, which had no affiliation with The Art Institute of Chicago, the plaintiff in the Dallas, Texas case.

### III.   The Illegal Purported Takeover by the Insurgent Directors

20.     On May 28, 2002, defendants Thompson, Chehab and Alban-Davies, along with

Michael Adams, a shareholder in Pedigree Investments, Ltd.; Marc Cohen, a shareholder in

Anglo Irish Bank; David Mullane of HSBC; Arnoud de Villegas, a shareholder in Concerto

Capital; Paul Wrench, a shareholder in Republic Multi-Advisor Fund, Ltd.; and attorneys Paul

Wexler ("Wexler") and Peter Morgenstern ("Morgenstern") of the law firm Bragar Wexler Eagel

& Morgenstern, P.C., 885 Third Avenue, Suite 3040, New York, New York 10022 (who, upon

information and belief, were retained by or on behalf of the Insurgent Directors), illicitly held an

IHO shareholders meeting at Wexler and Morgenstern's office in New York.  A number of the

named individuals participated by telephone.

21.     Upon information and belief, defendant Chehab played a central role in

organizing the illicit IHO shareholders' meeting that occurred on May 28, 2002.  Defendant

Chehab is, and was at all times mentioned, domiciled in and a resident of the State of New York.

Chehab and Cedar Capital Management were never investors or shareholders in IHO, although

they vaguely referred to connections with shareholders, as Chehab stated at the meeting on May

28, 2002: "Cedar Capital Management [is] the investment advisor to the Cadmus Fund, Cadmus

Multi-Strategy Fund.  Cadmus has invested in Concerto Offshore through the custodian VCN

Capital Markets."  Concerto Arbitrage, even if deemed to be the same as "Concerto Offshore," a

shareholder in IHO, held less than two percent of the shares of IHO – the same percent of the

shares of IHO that defendant Alban-Davies purportedly represents.

22.     The only persons at the meeting who were actually shareholders were de Villegas

and Wrench, who upon information and belief controlled only a few percent of the shares of

IHO.  Upon information and belief, none of the remaining persons were shareholders of IHO.

23.     IHO's Articles of Association provide (with italics added for emphasis):

### MEETING AND CONSENTS OF MEMBERS

61.    The *directors* of the Company may convene meetings of the members of the Company at such times and in such manner and places within or outside the British Virgin Islands as the *directors* consider necessary or desirable.

62.    Upon the written request of members holding 25 percent or more of the outstanding voting shares in the Company the *directors* shall convene a meeting of members.

63.    The *directors* shall in the normal course of events give not less than 10 days notice of meetings of members to those persons whose names on the date the notice is given appear as members in the share register of the Company and are entitled to vote at the meeting.

24.     The Information Memorandum similarly provides:

Meetings of Shareholders

Meetings of Shareholders will be held at such time and place as may be determined by the *Board [of Directors]* in accordance with the Fund's Memorandum and Articles of Association and otherwise in accordance with British Virgin Islands law.

25.     The shareholders meeting in question could only have taken place legally if IHO's sole director in May 2002, Seghers, convened a meeting of shareholders.

26.     Seghers never convened the shareholders meeting, and he never received a written request to convene a meeting by the members holding 25 percent or more of the outstanding voting shares in IHO.

27.     Indeed, Seghers was not even informed or given notice of the shareholders meeting, and only later did he learn that the illicit meeting had taken place. Upon information and belief, other investors and shareholders of IHO were also not given notice of the illicit meeting.

9

28.    The shareholders meeting did not have a quorum as defined in the Articles of Association; the holders of only approximately ten percent of the shares were at the meeting, and the meeting should have been dissolved.

29.    Upon information and belief, properly executed proxy forms were not presented at the meeting.

30.    Furthermore, the minutes of the unlawful meeting purport to convene a directors meeting as well, but the Articles of Association provide that no such meetings take place when there is one director:

> *105.*    If the company shall have only one director the provisions herein contained for meetings of the directors shall not apply but such sole director shall have full power to represent and act for the Company in all matters as are not by the Act or the Memorandum or these Articles required to be exercised by the members of the Company and in lieu of minutes of a meeting shall record in writing and sign a note or memorandum of all matters requiring a resolution of directors.    Such a note or memorandum shall constitute sufficient evidence of such resolution for all purposes.

31.    The Insurgent Directors' actions of holding a meeting and appointing new directors are actions that the Articles of Association specifically allocate to a sole director:

> *98.*    The continuing directors may act notwithstanding any vacancy in their body, save that if their number is reduced to their knowledge below the number fixed by or pursuant to these Articles as the necessary quorum for a meeting of directors, the *continuing directors or director may act* only for the purposes of appointing directors to fill any vacancy that has arisen or summoning a meeting of members.  [Emphasis added.]

32.    At the illicit meeting, the Insurgent Directors, with the participation and consent of Wexler and Morgenstern, removed Seghers as a director and caused the purported appointment of the three Insurgent Directors, the defendants in this action, as directors of IHO.

33.     Even if the meeting had been properly convened, the removal of Seghers as the director of IHO was a violation of the Articles of Association as well.  The Articles of Association provide:

> *89.*     A director may be removed from office, with or without cause, by a resolution of members adopted by the affirmative vote of a simple majority of the votes cast at a meeting of members at which were present in person or by proxy not less than one-half of the votes of the shares or class or series of shares entitled to vote on resolutions of members to be considered at the meeting.

34.     The IHO Information Memorandum also provides that "[a] Director may be removed from office at any time by a resolution of the Shareholders either passed at a properly convened and quorate meeting of the Shareholders or adopted in writing and signed by all of the Shareholders."

35.     There was no properly convened and quorate meeting of IHO shareholders on May 28, 2002, nor was there a resolution signed by all of the shareholders.  Instead, the Insurgent Directors, who had intentionally and improperly convened a purported IHO shareholders meeting, voted that Seghers be removed.

**IV.   The Improper Turnover of IHO to the Texas Receiver**

36.     Between late 2002 and early 2003, the Insurgent Directors retained the Dallas, Texas law firm of Winstead, Sechrest & Minick, P.C. of 5400 Renaissance Tower, 1201 Elm Street, Dallas, Texas 75270-2199 ("Winstead") as the attorneys for IHO.  Winstead simultaneously served as the attorneys for Daniel Jackson, the receiver of the domestic hedge funds.

37.     Winstead, acting upon the instructions of the Insurgent Directors but over the objections of plaintiff Seghers, gave full, de facto control of IHO and its assets to receiver Jackson in the action entitled *The Art Institute of Chicago v. Integral Hedging, L.P.*

38.     However, The Art Institute of Chicago, which had brought its action for losses incurred in other hedge funds, never invested any money into IHO.  Furthermore, the court orders defining the scope of and the entities under the receivership in *The Art Institute of Chicago v. Integral Hedging, L.P.* never included IHO.

39.     Thus, defendants deliberately and illicitly took over IHO, and in violation of law and breach of their fiduciary duties placed it in the de facto control of a receiver in an action in which IHO was not in receivership and in which the interests of the IHO shareholders were not adequately protected.

40.     In 2003, the Texas receiver voluntarily dismissed litigation Seghers had filed for IHO against entities that had caused IHO and its investors over $13 million in losses, including Morgan Stanley Dean Witter, Bizri Capital Partners, Inc., Kennedy Capital Advisors, Inc., and Olympia Capital International, Inc., among others.

41.     The Texas receiver, through his attorneys at Winstead, has previously presented to the court in Dallas two proposed plans for the allocation and distribution of the assets of the domestic hedge funds in receivership, later withdrawn.  The receiver has now filed a third proposed allocation and distribution plan, dated January 9, 2006.  That allocation and distribution plan, like the first two, includes the assets of IHO, which was never subject to the receivership.

42.     Upon information and belief, the IHO Insurgent Directors, in violation of law and breach of their fiduciary duties, have purportedly acquiesced in the receiver's allocation and distribution plan, which will result in enormous losses to the IHO shareholders, including plaintiffs, of nearly all of their investments, in addition to tens of millions of dollars of claims that the Insurgent Directors have intentionally never pursued on behalf of IHO while acquiescing in the dismissal of the litigation Seghers had filed for IHO against various third parties and in the

allocation and distribution of IHO's assets to the investors in entities that, unlike IHO, are subject to the Texas receivership.

## CAUSES OF ACTION

43.    The actions of the Insurgent Directors set forth above were taken in violation of (i) the Articles of Association and Information Memorandum which govern the directors and shareholders of IHO, as set forth in the first cause of action below; (ii) the provisions of The International Business Companies Act, Cap. 291, of the British Virgin Islands, as set forth in the second cause of action below; and (iii) the New York Business Corporation Law, as set forth in the third cause of action below.

44.    The Insurgent Directors' fraud and their waste and dissipation of the assets and claims of IHO also violate section 720 of the New York Business Corporation Law, as set forth in the fourth cause of action. The Insurgent Directors' actions included the withholding from plaintiffs Seghers and Komodo Holdings, as well as other IHO shareholders, of vital, material facts affecting their rights, interests and shareholdings in IHO. These acts and omissions effected a fraud against plaintiffs and, to the extent that defendants purport to have acted as directors of IHO, they have breached their fiduciary duties, as set forth in the fifth and sixth causes of action.

45.    Plaintiff Conrad Seghers, as the founder, sole officer and director of IHO, sues for himself and on behalf of IHO pursuant to Section 720 of the New York Business Corporation Law. Plaintiff Komodo Holdings, Ltd., as a minority shareholder of IHO, also brings this shareholder's derivative action in the name and right and on behalf of IHO. Plaintiffs seek in this action a declaratory judgment and a preliminary and permanent injunction to reverse, insofar

as possible, the wrongs perpetrated by the Insurgent Directors, and plaintiffs also seek financial remuneration for the damages that defendants' wrongful acts have caused.

### SHAREHOLDER'S DERIVATIVE COMPLAINT ALLEGATIONS

46.     Plaintiff Komodo brings this action as a shareholder's derivative action, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, in the right of IHO to procure a judgment in its favor.

47.     Plaintiff Komodo Holdings, Ltd., referred to on the shareholder list as Komodo Trading Co. ("Komodo"), is currently, and at all times relevant hereto was, the owner of at least 0.814 percent of the shares of stock of nominal defendant Integral Hedging Offshore, Ltd.  Such stock has a par value of $.01 per share.

48.     This action is not a collusive one to confer on a court of the United States jurisdiction that it would not otherwise have.

49.     Plaintiff Komodo will fairly and adequately represent the interests of all other stockholders of IHO similarly situated in enforcing the rights of IHO against defendants.

50.     Plaintiff Conrad Seghers, on behalf of IHO and Komodo, has on more than a dozen occasions orally and in writing demanded that defendants rescind the illegal corporate takeover and the improper turnover of IHO to the Texas receiver, but Seghers has been rebuffed on every occasion by defendants and their representatives.

### FIRST CAUSE OF ACTION

### Violations of the Articles of Association and Information Memorandum

51.     Plaintiffs repeat paragraphs 1-50.

52.     The actions of the Insurgent Directors violated the Articles of Association and

Information Memorandum of IHO in the following respects, as more fully set forth in paragraphs 20-42 above:

    a.    They violated the requirement that a director convene a shareholders meeting.

    b.    They did not provide notice of a special shareholders meeting to Seghers, nor, on information and belief, to other IHO shareholders.

    c.    They conducted the shareholders meeting without the required quorum.

    d.    They did not present, and acted without, proper proxies from IHO's shareholders.

    e.    They illegally terminated Seghers as a director of IHO.

    f.    They illegally appointed themselves the directors of IHO.

    g.    They illegally convened and conducted a special IHO directors meeting.

    h.    They illegally turned de facto control of IHO over to a Texas receiver for other hedge funds.

    i.    They wasted and dissipated the assets of IHO by permitting those assets to be allocated and distributed to the investors in other hedge funds.

53.    As purported shareholders of IHO, or persons purporting to speak or act on behalf of the shareholders of IHO, the Insurgent Directors were duty-bound by law to honor the provisions of the IHO Articles of Association and Information Memorandum.

54.    The Insurgent Directors breached their legal and contractual duties under the IHO Articles of Association and Information Memorandum as set forth in paragraphs 21-43 and 53 above.

55.    In consequence of defendants' breach of their legal and contractual duties, plaintiffs Seghers, IHO, and Komodo derivatively, are entitled to the declaratory judgment, injunction and damages set forth in the Demand for Relief below.

## SECOND CAUSE OF ACTION

### Violations of The International Business Companies Act of the British Virgin Islands

56.    Plaintiffs repeat paragraphs 1-55.

57.    The actions of the Insurgent Directors set forth in paragraphs 20-42 above were in violation of the following provisions of The International Business Companies Act, Cap. 291, of the British Virgin Islands ("IBCA") as set forth in the following paragraphs.

58.    The Insurgent Directors did not convene the May 28, 2002 shareholders meeting in compliance with, and they thereby violated, Part VI, No. 59(1-3) of the IBCA, which provides:

PART VI

PROTECTION OF MEMBERS AND CREDITORS

59.    (1)    Subject to any limitations in the Memorandum or Articles, the directors of a company incorporated under this Act may convene meetings of the members of the company at such times and in such manner and places within or outside the British Virgin Islands as the directors consider necessary or desirable.

(2)    Subject to a provision in the Memorandum or Articles for a lesser percentage, upon the written request of members holding more than 50 percent of the votes of the outstanding voting shares in the company, the directors shall convene a meeting of members.

(3)    Subject to any limitations in the Memorandum or Articles, a member shall be deemed to be present at a meeting of members if:—

(a)    he participates by telephone or other electronic

16

means; and

  (b)  all members participating in the meeting are able to hear each other.

59. The Insurgent Directors did not present proper proxies at the May 28, 2002 shareholders meeting in compliance with, and they thereby violated, Part VI, No. 59(4) of the IBCA, which provides:

  (4)  A member may be represented at a meeting of members by a proxy who may speak and vote on behalf of the member.

60. The Insurgent Directors did not provide notice of the May 28, 2002 shareholders meeting in compliance with, and they thereby violated, Part VI, No. 60 (1) of the IBCA, which provides:

  *60.*  (1)  Subject to a requirement in the Memorandum or Articles to give longer notice, the directors shall give not less than 7 days notice of meetings of members to those persons whose names on the date of the notice is given appear as members in the share register referred to in section 28 and are entitled to vote at the meeting.

61. The Insurgent Directors did not provide notice of the May 28, 2002 shareholders meeting in compliance with, and they thereby violated, Part VI, No. 64 of the IBCA, which provides in relevant part:

  *64.*  (1)  Any notice, information or written statement required under this Act to be given by a company incorporated under this Act to members must be served:—

    (a)  in the case of members holding registered shares:

      (i)  in the manner prescribed in the Memorandum or Articles, as the case may be, or

      (ii)  in the absence of a provision in the Memorandum or Articles, by personal service or by mail addressed to each

17

> member at the address shown in the share
> register . . . .

> (3)    For purposes of subsection (2), what amounts to sufficient
> notice is a matter of fact to be determined after having
> regard to all the circumstances.

62.    The Insurgent Directors did not convene the May 28, 2002 directors meeting in compliance with, and they thereby violated, Part V, No. 48 of the IBCA, which provides:

PART V

DIRECTORS, OFFICERS, AGENTS AND LIQUIDATORS

> *48.*    (1)    Subject to any limitations in the Memorandum or Articles,
> the directors of a company incorporated under this Act may
> meet at such times and in such manner and places within or
> outside the British Virgin Islands as the directors may
> determine to be necessary or desirable.

> (2)    A director shall be deemed to be present at a meeting of
> directors if:

> (a)    he participates by telephone or other electronic
> means; and

> (b)    all directors participating in the meeting are able to
> hear each other.

63.    The Insurgent Directors did not provide notice of the May 28, 2002 directors meeting in compliance with, and they thereby violated, Part V, No. 49 (1) and (2) of the IBCA, which provides:

> *49.*    (1)    Subject to a requirement in the Memorandum or Articles to
> give longer notice, a director shall be given not less than 3
> days notice of meetings of directors.

> (2)    Notwithstanding subsection (1), subject to any limitations
> in the Memorandum or Articles, a meeting of directors held
> in contravention of that subsection is valid if all of the
> directors, or such majority thereof as may be specified in
> the Memorandum or Articles entitled to vote at the
> meeting, have waived the notice of the meeting; and, for

18

this purpose, the presence of a director at the meeting shall be deemed to constitute waiver on his part.

64.    The Insurgent Directors did not meet the quorum requirements for the May 28, 2002 directors meeting in compliance with, and they thereby violated, Part V, No. 50 of the IBCA, which provides:

> 50.    The quorum for a meeting of directors is that fixed by the Memorandum or Articles; but, where no quorum is so fixed, a meeting of directors is properly constituted for all purposes if at the commencement of the meeting one half of the total number of directors are present in person or by alternate.

65.    In consequence of defendants' violations of the laws of the British Virgin Islands in conducting the affairs of IHO, plaintiffs are entitled to the declaratory judgment, injunction and damages set forth in the Demand for Relief below.

## THIRD CAUSE OF ACTION

### Violations of New York Business Corporation Law

66.    Plaintiffs repeat paragraphs 1-65.

67.    The Insurgent Directors did not convene the May 28, 2002 shareholders meeting in compliance with, and they thereby violated, New York Business Corporation Law § 602(a) and (c), which provides (with italicized emphasis added):

> **§ 602. Meetings of shareholders**
>
> (a) Meetings of shareholders may be held at such place, within or without this state, as may be fixed by or under the by-laws, or if not so fixed, at the office of the corporation in this state. . . .
>
> (c) Special meetings of the shareholders may be called by the *board [of directors]* and by such person or persons as may be so authorized by the certificate of incorporation or the by-laws. At any such special meeting only such business may be transacted which is related to the purpose or purposes set forth in the notice required by section 605 (Notice of meetings of shareholders).

68.     The Insurgent Directors did not provide notice of the May 28, 2002 shareholders

meeting in compliance with, and they thereby violated, New York Business Corporation Law

§ 605(a), which provides:

> **§ 605.  Notice of meetings of shareholders**
>
> (a) Whenever under the provisions of this chapter shareholders are required or permitted to take any action at a meeting, *notice shall be given stating the place, date and hour of the meeting* and, unless it is the annual meeting, indicating that it is being issued by or at the direction of the person or persons calling the meeting. Notice of a special meeting shall also state the purpose or purposes for which the meeting is called. Notice of any meeting of shareholders may be written or electronic. . . Notice of any meeting shall be given not fewer than ten nor more than sixty days before the date of the meeting, provided, however, that such notice may be given by third class mail not fewer than twenty-four nor more than sixty days before the date of the meeting, to each shareholder entitled to vote at such meeting.  If mailed, such notice is given when deposited in the United States mail, with postage thereon prepaid, directed to the shareholder at the shareholder's address as it appears on the record of shareholders . . . .  An affidavit of the secretary or other person giving the notice or of a transfer agent of the corporation that the notice required by this section has been given shall, in the absence of fraud, be prima facie evidence of the facts therein stated.

69.     The Insurgent Directors did not meet the quorum requirements for the May 28,

2002 shareholders meeting in compliance with, and they thereby violated, New York Business

Corporation Law § 608(a), which provides:

> **§ 608.  Quorum of shareholders**
>
> (a) The holders of a majority of the votes of shares entitled to vote thereat shall constitute a quorum at a meeting of shareholders for the transaction of any business, provided that when a specified item of business is required to be voted on by a particular class or series of shares, voting as a class, the holders of a majority of the votes of shares of such class or series shall constitute a quorum for the transaction of such specified item of business.

70.     The Insurgent Directors did not present proper proxies at the May 28, 2002 shareholders meeting in compliance with, and they thereby violated, New York Business Corporation Law § 609(a) and (i), which provides:

> **§ 609. Proxies**
>
> (a) Every shareholder entitled to vote at a meeting of shareholders or to express consent or dissent without a meeting may authorize another person or persons to act for him by proxy.
>
> (i) Without limiting the manner in which a shareholder may authorize another person or persons to act for him as proxy pursuant to paragraph (a) of this section, the following shall constitute a valid means by which a shareholder may grant such authority.
>
> > (1) A shareholder may execute a writing authorizing another person or persons to act from him as proxy. Execution may be accomplished by the shareholder or the shareholder's authorized officer, director, employee or agent signing such writing or causing his or her signature to be affixed to such writing by any reasonable means including, but not limited to, by facsimile signature.
> >
> > (2) A shareholder may authorize another person or persons to act for the shareholder as proxy by transmitting or authorizing the transmission of a telegram, cablegram or other means of electronic transmission to the person who will be the holder of the proxy or to a proxy solicitation firm, proxy support service organization or like agent duly authorized by the person who will be the holder of the proxy to receive such transmission, provided that any such telegram, cablegram or other means of electronic transmission must either set forth or be submitted with information from which it can be reasonably determined that the telegram, cablegram or other electronic transmission was authorized by the shareholder.  If it is determined that such telegrams, cablegrams or other electronic transmissions are valid, the inspectors or, if there are no inspectors, such other persons making that determination shall specify the nature of the information upon which they relied.

71.     The Insurgent Directors did not elect defendants as directors at the May 28, 2002 shareholders meeting in compliance with, and they thereby violated, New York Business Corporation Law § 703(a), which provides:

### § 703.  Election and term of directors

(a) At each annual meeting of shareholders, directors shall be elected to hold office until the next annual meeting except as authorized by section 704 (Classification of directors). The certificate of incorporation may provide for the election of one or more directors by the holders of the shares of any class or series, or by the holders of bonds entitled to vote in the election of directors pursuant to section 518 (Corporate bonds), voting as a class.

72.     The Insurgent Directors did not remove Seghers as a director at the May 28, 2002 shareholders meeting in compliance with, and they thereby violated, New York Business Corporation Law § 706(a), which provides:

### § 706.  Removal of directors

(a) Any or all of the directors may be removed for cause by vote of the shareholders. The certificate of incorporation or the specific provisions of a by-law adopted by the shareholders may provide for such removal by action of the board, except in the case of any director elected by cumulative voting, or by the holders of the shares of any class or series, or holders of bonds, voting as a class, when so entitled by the provisions of the certificate of incorporation.

73.     The Insurgent Directors did not meet the quorum requirements for the May 28, 2002 directors meeting in compliance with, and they thereby violated, New York Business Corporation Law § 707(a), which provides:

### § 707.  Quorum of directors

Unless a greater proportion is required by the certificate of incorporation, a majority of the entire board shall constitute a quorum for the transaction of business or of any specified item of business, except that the certificate of incorporation or the by-laws may fix the quorum at less than a majority of the entire board but not less than one-third thereof.

74.     The Insurgent Directors did not convene the May 28, 2002 directors meeting in compliance with, and they thereby violated, New York Business Corporation Law § 710, which provides:

22

### § 710. Place and time of meetings of the board

Meetings of the board, regular or special, may be held at any place within or without this state, unless otherwise provided by the certificate of incorporation or the by-laws. The time and place for holding meetings of the board may be fixed by or under the by-laws, or, if not so fixed, by the board.

75.    The Insurgent Directors did not remove Seghers as a director at the May 28, 2002 shareholders meeting in compliance with, and they thereby violated, New York Business Corporation Law § 716(a), which provides:

### § 716. Removal of officers

(a) Any officer elected or appointed by the board may be removed by the board with or without cause. An officer elected by the shareholders may be removed, with or without cause, only by vote of the shareholders, but his authority to act as an officer may be suspended by the board for cause.

76.    The Insurgent Directors did not perform their duties as purported directors in compliance with, and they thereby violated, New York Business Corporation Law § 716(a), which provides:

### § 717. Duty of directors

(a)  A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances.  In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements including financial statements and other financial data, in each case prepared or presented by:

(1) one or more officers or employees of the corporation or of any other corporation of which at least fifty percentum of the outstanding shares of stock entitling the holders thereof to vote for the election of directors is owned directly or indirectly by the corporation, whom the director believes to be reliable and competent in the matters presented,

(2) counsel, public accountants or other persons as to matters which the director believes to be within such person's professional or expert competence, or

(3) a committee of the board upon which he does not serve, duly designated in accordance with a provision of the certificate of incorporation or the by-laws, as to matters within its designated authority, which committee the director believes to merit confidence, so long as in so relying he shall be acting in good faith and with such degree of care, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted. A person who so performs his duties shall have no liability by reason of being or having been a director of the corporation.

77.     In consequence of defendants' violations of the New York Business Corporation Law in conducting the affairs of IHO, plaintiffs are entitled to the declaratory judgment, injunction and damages set forth in the Demand for Relief below.

## FOURTH CAUSE OF ACTION

### Violations of New York Business Corporation Law Section 720

78.     Plaintiffs repeat paragraphs 1-77.

79.     Plaintiffs bring this cause of action pursuant to New York Business Corporation Law § 720, which provides:

**§ 720. Action against directors and officers for misconduct**

(a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:

(1) Subject to any provision of the certificate of incorporation authorized pursuant to paragraph (b) of section 402, to compel the defendant to account for his official conduct in the following cases:

(A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.

(B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.

(2) To set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness.

24

(3) To enjoin a proposed unlawful conveyance, assignment or transfer of corporate assets, where there is sufficient evidence that it will be made.

(b) An action may be brought for the relief provided in this section, and in paragraph (a) of section 719 (Liability of directors in certain cases) by a corporation, or a receiver, trustee in bankruptcy, officer, director or judgment creditor thereof, or, under section 626 (Shareholders' derivative action brought in the right of the corporation to procure a judgment in its favor), by a shareholder, voting trust certificate holder, or the owner of a beneficial interest in shares thereof.

80.    Plaintiff Seghers brings this action under BCL § 720 as the officer and director of IHO.  Plaintiff Komodo brings this action under BCL § 720 as a shareholder's derivative action brought in the right of IHO to procure a judgment in its favor.

81.    Defendants violated Section 720 of the BCL in that they:

   (i)    failed to perform and violated their duties in the management and disposition of corporate assets;

   (ii)    wasted assets of IHO; and

   (iii)    knowingly and unlawfully conveyed and transferred corporate assets to the Receiver in the AIC action in which IHO was not named a party and had no involvement in the lawsuit, and in which the receiver had not previously controlled IHO or its assets.

82.    Pursuant to BCL § 720, plaintiffs are entitled to set aside such an "unlawful conveyance, assignment or transfer of corporate assets" since the defendants knew or should have known of its unlawfulness.

83.    The January 9, 2006 submission by the Texas receiver to the court in Dallas of a plan of allocation and distribution, including the distribution of the assets of IHO, to investors in

25

the domestic hedge funds confronts plaintiffs with immediate and irreparable harm for which plaintiffs have no adequate remedy at law.

84.     In consequence of defendants' violations of Section 720 of the New York Business Corporation Law in conducting the affairs of IHO, plaintiffs are entitled to the declaratory judgment, injunction and damages set forth in the Demand for Relief below.

## FIFTH CAUSE OF ACTION

### Common Law Fraud

85.     Plaintiffs repeat paragraphs 1-84.

86.     Defendants, knowing that plaintiff Seghers would forcefully protect the company he had founded and controlled and its other shareholders, decided to take over IHO and to turn its assets over to the Texas receiver in a fraudulent scheme.

87.     Defendants had a duty to disclose to Seghers, Komodo and the other IHO shareholders (i) the impending shareholders' and directors' meetings, (ii) the plan to remove Seghers as the director and officer of IHO, and (iii) the plan to turn over IHO and its assets to the Texas receiver.

88.     Defendants, with fraudulent intent, withheld notice to Seghers, Komodo and other IHO shareholders of the special corporate meetings and of defendants' takeover and turnover plans.

89.     The information withheld by defendants was material to the decision-making of any officer, director or shareholder of IHO.

90.     In reliance upon the incomplete information available to them, plaintiffs were unable to protect their rights as officer, director and shareholder of IHO.

91.     Plaintiffs were thereby divested of their rights and ownership interests in IHO and were otherwise damaged by defendants' acts and omissions.

92.     Plaintiffs are entitled to the declaratory judgment, injunction and damages set forth in the Demand for Relief below.

## SIXTH CAUSE OF ACTION

### Breach of Fiduciary Duty

93.     Plaintiffs repeat paragraphs 1-92.

94.     Defendants, purporting to be directors of IHO, assumed fiduciary duties to IHO's shareholders.

95.     Defendants breached their fiduciary duties to plaintiffs and the other shareholders of IHO by engaging in the wrongful conduct set forth in paragraphs 21-43 and 53 above.

96.     Plaintiffs are entitled to the declaratory judgment, injunction and damages set forth in the Demand for Relief below.

## DEMAND FOR RELIEF

WHEREFORE, plaintiffs demand judgment against defendants as follows.

### I. Declaratory Judgment

Pursuant to 28 U.S.C. § 2201, plaintiffs are entitled to a declaration as follows:

A.     The May 28, 2002 shareholders' and directors' meetings, the purported removal of Seghers as director and officer of IHO, the appointment of the Insurgent Directors as directors of IHO, the turnover of IHO to the de facto control of the Texas receiver and the acquiescence in the distribution of IHO's assets by the receiver to other persons were and are in violation of law.

B.     The May 28, 2002 IHO shareholders' and directors' meetings were illegally convened and conducted.

C.      All purported actions taken by the participants at the May 28, 2002 IHO shareholders' and directors' meetings, and any and all resolutions purportedly adopted at or after those meetings by the Insurgent Directors or other meeting participants are invalid, null and void.

D.      Seghers has at all times since at least the second quarter of 2002 been the sole manager, officer and director of IHO with exclusive and full authority to act on behalf of IHO.

E.      The turnover of IHO by the Insurgent Directors, defendants herein, to the control of the Texas receiver and his counsel is null and void.

F.      The proposed allocation and distribution of the assets of IHO is a nullity and is not binding on plaintiffs herein or on other IHO shareholders.

G.      By reason of the illegal conduct of the Insurgent Directors, they and the persons and entities for whom they purport to act are entitled to receive nothing in any ultimate allocation and distribution of the assets of IHO.

H.      By reason of the illegal conduct of the Insurgent Directors, they and the persons and entities for whom they purport to act are barred and precluded from taking any corporate action to change the ownership and management structures of IHO.

## II.  Preliminary and Permanent Injunction

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the law of New York, plaintiffs are entitled to a preliminary injunction *pendent lite* and to a permanent injunction as follows:

A.      Enjoining any action by the Insurgent Directors, defendants herein, to turn over any property or rights of IHO and its shareholders to the ownership or control of the Texas receiver and his counsel.

B.      Enjoining the Insurgent Directors and the persons and entities for whom they act from accepting any allocation and distribution of the assets of IHO in the Texas litigation.

C.      Enjoining the Insurgent Directors and the persons and entities for whom they purport to act from taking any corporate action to change the ownership and management structures of IHO.

D.      Enjoining the Insurgent Directors from acting, directly or through agents, or purporting to act in any capacity in any matter, or taking any corporate action, on behalf of IHO or its shareholders.

E.      Restoring Conrad P. Seghers as the sole officer and director of IHO, authorized to take all action necessary and appropriate on behalf of IHO and its shareholders and to file all necessary and appropriate documents to reinstate his authority on behalf of IHO.

F.      Enjoining the Insurgent Directors and the persons and entities for and through whom they purport to act from receiving any compensation from IHO and ordering that they take nothing in any ultimate allocation and distribution of the assets of IHO.

### III.   Damages and Further Relief

Plaintiffs demand:

A.      Compensatory damages in the amount of $4,169,408 for defendants' illicit actions that caused the loss of IHO's assets.

B.      Consequential damages calculated as the lost income that would have been received on IHO's assets but for defendants' actions.

C.      Punitive damages in the amount of $4,169,408 for defendants' fraud and their wanton and malicious conduct in taking over IHO and dissipating its assets.

29

D.    Interest on all compensatory damages.

E.    Plaintiffs' attorneys' fees and costs in bringing this action.

F.    Such further relief as may be just.

Dated:    New York, New York
          January 12, 2006

                                        MANUEL & JONES, P.C.

                            By _____
                                        Charles B. Manuel, Jr. (CM 3020)
                                        230 Park Avenue, Suite 1000
                                        New York, New York 10169
                                        Tel. 212-808-6584
                                        Fax 212-808-3020

                                        Rosenfeld Law, PLLC
                                        Shira Y. Rosenfeld (SR 5392)
                                        148 West 68th Street, Suite 6G
                                        New York, New York 10023
                                        Tel.  646-637-3226
                                        Fax  212-721-6012
                                        Of Counsel

                                        Attorneys for Plaintiffs